**BAPTIST MEDICAL CENTER OF OKLAHOMA, INC., Petitioner,**

v.

**TRANSCON LINES and Liberty Mutual Insurance, Respondents.**

No. 77290.

Supreme Court of Oklahoma.

March 30, 1993.

Rehearing Denied June 2, 1993.

Robert T. Luttrell, III, W. Brent Kelley, Williams, Luttrell & Boren, P.C., Oklahoma City, for petitioner.

W. Jeffrey Dasovich, Oklahoma City, for respondents.

WATT, Justice.

### SUMMARY OF FACTS AND PROCEDURAL HISTORY

In July of 1985, Jimmy Clyde Savage suffered a heart attack while driving a truck for his employer, respondent Transcon Lines. Savage filed a claim in the Workers' Compensation Court and on August 18, 1986, the court ruled that the heart attack was an accidental injury arising out of and in the course of Savage's employment. The court awarded Savage temporary total disability and permanent partial disability.

When Savage's heart condition deteriorated, doctors determined that a heart transplant was the only remaining viable medical treatment. Savage was referred to the Heart Transplantation Institute at petitioner Baptist Medical Center of Oklahoma, Inc. ("Hospital"), where he underwent a heart transplant on March 26, 1988. On Savage's motion, the Workers' Compensation Court entered an order reopening his case. *See* 85 O.S.1981 § 28. The order, dated December 19, 1988, stated that Savage had sustained a change of condition for the worse and that the heart transplant was causally connected to his on-the-job heart attack. The court also found that Savage had become totally and permanently disabled as defined by 85 O.S.Supp.1988 § 3(12). The determination of liability for medical expenses was reserved for further proceedings.

Following the trial court's December order, Savage, his wife, and respondents Transcon Lines and its insurance carrier, Liberty Mutual Insurance, entered into a settlement and filed a Joint Petition to close the workers' compensation case. *See*

85 O.S.1981 § 84. The petition provided for lump sum disability payments to Savage and his wife, as well as $50,000.00 to Savage for future medical expenses. The parties to the agreement knew that Hospital had been rendering medical care and services to Savage and would continue to do so after the settlement date.[1] The Workers' Compensation Court approved the Joint Petition by order dated January 13, 1989. Hospital was not a party to the proceedings, had no notice of the same and was not provided a copy of the order approving the joint settlement. Hospital continued to provide medical services to Savage until his death in July of 1989.

On May 16, 1990, Hospital and other medical care providers commenced a proceeding in the Workers' Compensation Court to recover medical care costs. Hospital claimed $270,181.41 as costs for Savage's heart transplant and follow-up care. The court found that the heart transplant and Hospital's charges were reasonable, necessary and supported by competent medical evidence. However, the court ordered respondents to pay Hospital only $190,948.95, which represented that portion of the medical costs incurred prior to the date of the Joint Petition settlement, January 13, 1989. The court held that the Joint Petition order served to bar payment for the charges which were incurred after January 13, 1989.

Both parties appealed to a three judge panel of the Workers' Compensation Court, which summarily affirmed the trial court's order. Hospital then appealed to the Court of Appeals. Relying exclusively on *Bill Hodges Truck Co. v. Gillum*, 774 P.2d 1063 (Okla.1989), the Court of Appeals sustained the lower court's order.

### ISSUES

Hospital asserts on certiorari, as it did on appeal, that (1) Hospital had a separate statutory right to recover for its medical services which could not have been cut off

---

1. At the settlement hearing, respondents acknowledged that through the Joint Petition they were attempting, among other things, to cut off any further liability for payment to Hospital of Savage's medical expenses.

by a settlement to which it was not a party, and (2) Hospital's right to due process of law was violated when its ability to recover the value of medical services rendered was terminated without notice. We hold that the January 13, 1989, order approving the Joint Petition did not affect Hospital's right to recover for services thereafter rendered, because Hospital was not a party to those proceedings and did not receive notice of the same. Accordingly, we hold that the lower court's disallowance of those medical costs incurred after January 13, 1989, deprived Hospital of a protected property interest in violation of the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

## I.

### INAPPLICABILITY OF *BILL HODGES TRUCK CO. v. GILLUM*

In *Bill Hodges Truck Co. v. Gillum,* 774 P.2d 1063 (Okla.1989), a worker suffered a job-related heart attack for which he claimed workers' compensation benefits. Three years after he was adjudged permanently, totally disabled, the worker sought approval of a heart transplant with incidental medical care. The Workers' Compensation Court determined that a heart transplant procedure was within the category of reasonable and necessary medical expenses to be born by the employer. This Court reversed on appeal, observing first that no proceeding to reopen the claim had been brought in the Workers' Compensation Court. We then held that the worker failed to prove that there was a causal nexus between the heart transplant and the compensable harm attributable to the accidental injury. The Court further stated:

A permanent disability award constitutes a solemn adjudication that the worker's healing period has come to an end and his condition or state of health has reached the very optimum that is *then* medically attainable.... The moment permanent disability begins, the right to

receive medical treatment ceases by operation of law except, of course, for certain limited, tightly structured and explicitly authorized situations.... Once adjudged to have permanent disability, a worker is entitled to medical attention only upon *establishing recurrence of the postaward healing period in a reopening proceeding* under 85 O.S.1981 § 28.

*Id.* at 1065–66 (emphasis in original) (footnotes omitted).

In the present case, the Court of Appeals relied exclusively on *Gillum* as support for upholding the order of the Workers' Compensation Court. The appellate court held that under *Gillum*, Hospital's attempt to recover the post-Joint Petition charges was precluded by the lower court's determination that Savage was totally and permanently disabled.[2] In disposing of Hospital's due process argument, the Court of Appeals concluded that Hospital's rights were not violated because Savage was not entitled to have post-award medical expenses paid by respondents. Although we reaffirm the statement of law set forth in *Gillum*, we find that the appellate court's absolute and unconditional reliance upon it resulted in an over-broad application of that case to the present facts.

We first note that, unlike *Gillum*, there was a reopening of the worker's compensation claim in the present case. Second, the decisive issue in *Gillum* was whether the worker presented sufficient evidence to establish a causal link between his accident and subsequent condition. There is no such issue in the case at bar. It is undisputed that Savage suffered a change of condition for the worse which necessitated further medical treatment. Finally, *Gillum* does not address the right of a medical care provider to receive payment for services rendered after an adjudication of permanent disability has been made, nor does it address the due process rights of such party when its statutory right to receive payment has been terminated without

---

**2.** We note that the trial court's finding of total and permanent disability was not made in the order approving the Joint Petition, dated January 13, 1989, but rather was made in the order of December 19, 1988. Because we conclude that *Gillum* is inapplicable to the present case, however, we need not rectify this discrepancy.

notice. On the basis of these distinctions, we hold that *Gillum* is inapplicable to the present case.

## II.

### EFFECT OF TRIAL COURT'S ORDER ON HOSPITAL

The trial court's order of January 13, 1989, approving the Joint Petition was based upon 85 O.S.1981 § 84, which provides for joint petition settlement in workers' compensation cases. Among other things, § 84 states:

[The Workers' Compensation] Court shall have jurisdiction to consider the proposition of whether or not a final settlement may be had between the parties presenting such petition.... If the Court decides it is for the best interest of both parties to said petition that a final award be made, a decision shall be rendered accordingly and the Court may make an award that shall be final as to the rights of all parties to said petition....

Title 85 O.S.Supp.1986 § 3.6(B) provides in relevant part:

The order, decision or award of the Court shall be final and conclusive upon all questions within its jurisdiction between the parties, unless, within twenty (20) days after a copy of such order, decision or award has been sent by the Administrator to the parties affected, an action is commenced in the Supreme Court of the state, to review such order, decision or award.

In the present case, Hospital was not a party to the Joint Petition, did not have notice that the petition had been filed and was never given a copy of the order approving the same. This Court has previously addressed fact situations similar to those presented herein and held that an order approving a joint petition is not final as to a person who is not a party to, and had no notice of, the joint petition proceedings.

In *Higley v. Schlessman*, 292 P.2d 411 (Okla.1956), an employee suffered a job-related injury and sought medical treatment. Although the employer paid for initial medical treatment, the worker was subsequently treated by, and at the expense of, two Veterans Administration hospitals. Several months later, the Administrator of Veterans Affairs filed a claim for costs of hospitalization and medical care with the State Industrial Commission (now Workers' Compensation Court). Before an order or award was entered on the claim, the Commission approved a joint petition settlement entered into by the worker, his employer and the employer's insurance carrier. The Veterans Administration was not a party to the joint petition and did not receive a copy of the Commission's order. The Administrator filed a motion to set aside the order, which was denied on the theory that the Commission was without jurisdiction to grant relief after the joint petition and order were filed.

On appeal, this Court held:

Under [85 O.S.1951 § 29] the order of the Commission approving the joint petition settlement did not become final as to petitioner [the Administrator] until 20 days after notice of said order was sent to petitioner by the Commission and if the allegation contained in the motion of petitioner that such notice has not been sent to him is true the order of the Commission approving the joint petition settlement was not final as to him at the time he filed his motion to vacate and set his claim for hearing.[3]

*Higley*, 292 P.2d at 414. *See also Patterson Steel Co. v. Smith*, 353 P.2d 126, 128 (Okla.1960), where this Court held that the settlement and award made to the employee was not final as to his doctor, because the doctor was not made a party to the joint petition proceedings, had no notice of the same and was never sent a copy of the final order.

In *Viersen & Cochran Drilling Co. v. Ford*, 425 P.2d 965 (Okla.1967), an employ-

---

**3.** The applicable language in 85 O.S.1951 § 29 is virtually identical to that found in 85 O.S.Supp. 1986 § 3.6(B), *supra.*

ee was awarded disability for an on-the-job injury and then settled his claim by joint petition. After the employee died, his widow filed a claim with the State Industrial Court for death benefits under the Workmens' Compensation Act. This Court ruled that the widow was entitled to maintain her action because, *inter alia*, she was not a party to the joint petition. We held:

> [Section] 84 speaks of "both parties to said petition" and provides that "the Commission may make an award [on a joint petition] that shall be final as to the rights of all parties to said petition * * *." The respondent herein was not one of the parties to this petition and did not join therein. In our view, petitioners should not be heard to say that claimant is barred by an award in an action in which she did not participate and of which she had no formal notice, from now asserting her separate and distinct claim for death benefits.

*Id.* at 968.

■ The foregoing cases demonstrate that an order of the Workers' Compensation Court approving a joint petition is final only as to those who are parties to the agreement, and then only after twenty days has expired from the date notice of the order was sent to that party. As previously noted, Hospital was not a party to the Joint Petition at issue herein and notice of the court's order was never sent to Hospital. Accordingly, we hold that the order of January 13, 1989, approving the Joint Petition is not final as to Hospital. As will be illustrated below, to hold otherwise would subject Hospital to an unconstitutional deprivation of its protected property interest in securing payment for the medical services it rendered after January 13, 1989.

## III.

## HOSPITAL'S RIGHT TO DUE PROCESS OF LAW

Section 14(E) of the Workers' Compensation Act, 85 O.S.1981 § 1, et seq., provides in relevant part:

> The right to recover charges for every type of medical care for personal injuries arising out of and in the course of covered employment as herein defined, shall lie solely with the Workers' Compensation Court, and all jurisdiction of the other trial courts of this state over such action is hereby abolished.

Title 85 O.S.Supp.1986 § 3.4 states that "The [Workers' Compensation] Court shall be vested with jurisdiction over all claims filed pursuant to the Workers' Compensation Act." Upon issuance of an order approving final settlement, the Workers' Compensation Court is divested of "jurisdiction over any claim for the injury or any results arising from same." 85 O.S.1981 § 84.

In the present case, Hospital treated Savage for injuries arising out of and in the course of covered employment as defined by the Act. Then, pursuant to the dictates of 85 O.S.Supp.1986 § 14(E), Hospital submitted the charges for such medical treatment to the Workers' Compensation Court for approval. Hospital complied with all statutorily mandated procedures to secure payment for the services it rendered and the trial court found that Hospital's charges were reasonable, necessary and supported by competent medical evidence. However, without notifying Hospital, the court terminated Hospital's right to receive payment for those medical services it rendered after January 13, 1989. We find that such ruling violated Hospital's right to due process of law.

■ The Fourteenth Amendment to the United States Constitution dictates that no state may deprive one of property without due process.

> Since the landmark case of *Mullane v. Central Hanover Bank & Trust Co.,* [339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950),] the U.S. Supreme Court has required that notice meeting minimum constitutional standards precede judicial action which affects a protected property interest. Notice must be reasonably calculated to inform interested parties of the pending action and of every critical stage so as to afford them an opportuni-

ty to defend or to meet the issues at a meaningful time and in a meaningful manner.

Under *Mullane* and its progeny, one who seeks to alter another's legal rights must give actual notice to the latter before a court can act upon the claim.

*Matter of Estate of Pope*, 808 P.2d 640, 642 (Okla.1990). *See also Bomford v. Socony Mobile Oil Co.*, 440 P.2d 713, 718 (Okla.1968).

■ We hold that Hospital's expectation of payment for services rendered in accordance with the Workers' Compensation Act was a "protected property interest." We also find that the trial court's order disallowing payment for services rendered after January 13, 1989, directly and adversely affected Hospital's interest. Savage's heart transplant was judicially determined to be an injury which arose out of and in the course of employment as defined in the Act. Therefore, Hospital was statutorily required to submit its charges to the Workers' Compensation Court for approval. By entering the order approving the Joint Petition, the Workers' Compensation Court ostensibly divested itself of jurisdiction over "any claim for [Savage's] injury or any results arising from same." 85 O.S.1981 § 84. As previously stated, no other court has jurisdiction to act upon a claim for medical services rendered in connection with a workers' compensation claim. Thus, Hospital would have no recourse at law if denied the right to recover its charges.

The present fact situation is analogous to those condemned by the United States Supreme Court in *Tulsa Professional Collection Services, Inc. v. Pope*, 485 U.S. 478, 108 S.Ct. 1340, 99 L.Ed.2d 565 (1988), *Walker v. City of Hutchinson*, 352 U.S. 112, 77 S.Ct. 200, 1 L.Ed.2d 178 (1956), and *City of New York v. New York, N.H. & H.R. Co.*, 344 U.S. 293, 73 S.Ct. 299, 97 L.Ed. 333 (1953). In *Pope*, the Court held that known or reasonably ascertainable creditors in a probate proceeding, whose claims are not merely conjectural, are entitled to actual notice of the time for filing a claim with the estate's representative. In *Walker*, the Court ruled that in a condem-

nation proceeding, actual notice must be given to a landowner whose name and address the government knows or could learn from the official county records. And, in *New York, N.H. & H.R. Co.*, the Court concluded that a known creditor in a bankruptcy proceeding must be given actual notice that its claim will be barred unless filed within the statutory period.

In the present case, Hospital was not a party to the Joint Petition proceedings and it did not receive notice of either the filing of the Joint Petition or of the order approving the same. Furthermore, Hospital's claim was not conjectural. All parties to the Joint Petition knew that Hospital had treated, and would continue to treat, Savage for his heart condition. Finally, Hospital's right to receive payment for its services was terminated without notice. Such action clearly violated Hospital's right to due process of law.

## CONCLUSION

The January 13, 1989, order of the Workers' Compensation Court approving the Joint Petition was not final as to Hospital, because Hospital was not a party to the proceedings and did not receive notice of the court's order. We do not hereby attempt to set forth the notification procedures which must be used to protect the due process rights of medical care providers or other similarly situated claimants in joint petition proceedings. We hold only that Hospital's right to due process of law was violated by the procedures employed herein. The determination of what procedural safeguards must be implemented in such situations is left to the Workers' Compensation Court, whose expertise may guide it in fashioning appropriate notification standards.

Certiorari previously granted. The opinion of the Court of Appeals is **VACATED.** The order of the Workers' Compensation Court denying Hospital's request for payment of those expenses incurred after January 13, 1989, is **REVERSED,** and this cause is **REMANDED** for further proceedings consistent with this Opinion.

LAVENDER, V.C.J., and OPALA, ALMA WILSON and KAUGER, JJ., concur.

SUMMERS, J., concurs in judgment.

HODGES, C.J., and SIMMS and HARGRAVE, JJ., dissent.